UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SHAWN BEVERLY,

                Plaintiff,

      vs.

The CITY OF NEW YORK,
NEW YORK CITY DETECTIVES
EDRIAN IRIZARRY, Shield 6201
TARAH BARRETT, Shield 2277,
EMERITO DEJESUS, Shield 7309, and
SERGEANT JUAN ORTIZ, Shield 5606,
in their individual and official capacities,

              Defendants.
------------------------------------------------------------x

**FIRST AMENDED COMPLAINT**

**15 CV 2315 (GHW)**
**ECF Case**

**JURY TRIAL DEMANDED**

Plaintiff Shawn Beverly, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.  This civil rights action arises from the false arrest, strip search, and malicious

prosecution of Shawn Beverly ("Plaintiff") at the hands of NYPD Narcotics Detectives,

who baselessly searched Plaintiff and fabricated criminal charges against him.  Plaintiff

asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the

individual defendants for false arrest and imprisonment, illegal strip search, malicious

prosecution, and failure to intervene, and a *Monell* claim against the City of New York

for the same constitutional violations.  Additionally, Plaintiff asserts analogous claims

under New York Law against the individual defendants, and against the City of New

York under the doctrine of *respondeat superior*.  Plaintiff seeks compensatory and

punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.    Plaintiff Shawn Beverly is a United States citizen and at all relevant times a resident of the City of New York, State of New York.

7.    The individually named defendants Detective Tarah Barrett (Shield # 2277) ("Det. Barrett"), Detective Edrian Irizarry (Shield # 6201) ("Det. Irizarry"), Detective

Emerito DeJesus (Shield 7309) ("Det. DeJesus"), and Sergeant Juan Ortiz (Shield #

5606) ("Sgt. Ortiz") (collectively, the "individual defendants") are and were at all times

relevant herein officers, employees and agents of the New York City Police Department

("NYPD").

8.      On the date of the incident giving rise to this complaint, the individual

defendants were assigned to the Narcotics Borough Manhattan South.

9.      Each individual defendant is sued in his individual and official capacity.  At

all times mentioned herein, each individual defendant acted under the color of state law,

in the capacity of an officer, employee, and agent of defendant City of New York

("Defendant City").

10.     Defendant City is a municipality created and authorized under the laws of

New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD,

which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York

within ninety days of the incident, being assigned Claim # 2014PI020416.  At least 30

days have elapsed since the service of the Notice of Claim, and adjustment and payment

has been neglected or refused.

12.     The City of New York demanded a hearing pursuant to General Municipal

Law § 50-h, which hearing was held on August 26, 2014.

13.     This action has been commenced within one year and ninety days after the

occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14.     On the afternoon of April 2, 2014, Plaintiff was with two friends, Frank Mona

("Mr. Mona") and Laura Zilioli ("Ms. Zilioli"), and they decided to grab a meal together

from Empanada Mama ("the Restaurant"), a fast food restaurant, at 763 9th Avenue in the

County and State of New York.

15.     Mr. Mona, driving a Lexus ("the Lexus"), took Plaintiff, who was in the front

passenger seat of the Lexus, and Ms. Zilioli, who was in the back seat, to the Restaurant

around 4:00 PM.

16.     After getting to the Restaurant, Mr. Mona and Plaintiff left the car and went in

the Restaurant.  Mr. Mona placed the order and Plaintiff used the restroom.

17.     While waiting for the food to be ready, Plaintiff and Mr. Mona stood outside

the Restaurant, while Ms. Zilioli remained in the Lexus, which was lawfully parked along

9th Avenue.

18.     Remembering that he needed to go to Duane Reade to refill his pre-paid credit

card, Plaintiff went to a Duane Reade store a few blocks away.

19.     By the time Plaintiff returned from Duane Reade, Mr. Mona and Ms. Zilioli

were inside the Lexus with the food from the Restaurant.  Plaintiff joined them, and they

began eating their food.  There was nothing suspicious or unlawful about their behavior.

20.     After eating and talking, around 5:15 PM, Ms. Zilioli had to leave to run an

errand.  Plaintiff gave her a cigarette, and Ms. Zilioli got out of the Lexus and walked

away.

21.     At no point before or after Ms. Zilioli left the Lexus was there any illicit drug

or drug paraphernalia – or any other contraband or suspicious activity – visible in the car.

22.     Soon after Ms. Zilioli left, two male NYPD Narcotics officers in plain clothes – Det. Irizarry and Sgt. Ortiz – approached the car on Plaintiff's side, knocking on the window, and one pulled out his badge.

23.     Det. Irizarry and Sgt. Ortiz demanded that Plaintiff get out of the car.  Plaintiff complied with their order, and as soon he got out of the car, Det. Irizarry and Sgt. Ortiz grabbed him and handcuffed him behind his back.

24.     Plaintiff asked why they were handcuffing him, and they replied, "safety." Det. Irizarry and Sgt. Ortiz searched Plaintiff, going through all his pockets, and found nothing more than $13 and his Duane Reade receipt.

25.     Det. Irizarry and Sgt. Ortiz also ordered Mr. Mona out of the car, handcuffing and searching him as well, recovering 4 grams of methamphetamine.

26.     Det. Irizarry and Sgt. Ortiz proceeded to search the Lexus, joined by other Narcotics Officers who had arrived, including Det. DeJesus; they found a pipe hidden on the driver's side of the Lexus where Mr. Mona was sitting.

27.     Additional Narcotics officers followed Ms. Zilioli and arrested her, bringing her back to the Lexus, where the individual defendants searched her and found nothing unlawful on her person or in her purse.

28.     Meanwhile, Plaintiff questioned why he was being arrested.  Posing no threat to the officers' "safety," Plaintiff asked why the handcuffs were still on him.  The individual defendants would not address any of Plaintiff's questions.

29.     The individual defendants placed Plaintiff in a van which transported him to the NYPD 18th Precinct (also known as "Midtown North Precinct") ("the Precinct"), at 306 West 54th Street in Manhattan.

30.     At the Precinct, and on the way to the Precinct, the individual defendants collaborated and concocted fictions to justify their unlawful searches and arrests, and they planned to submit fictional criminal charges to the New York County District Attorney's Office.

31.     At the Precinct, Plaintiff was photographed, fingerprinted, and processed. Plaintiff was also subjected to a degrading and dehumanizing strip search conducted by Det. Irizarry.

32.     Plaintiff was ordered to take off his underwear and show Det. Irizarry his private areas from behind; forced to spread his buttocks to prove nothing was hidden in his anus; told to squat and cough for confirmation; commanded to hold these humiliating positions while Det. Irizarry spoke insouciantly in Spanish to some other officers.

33.     During the strip search, Det. Irizarry seemed certain that Plaintiff was hiding something, and he was determined to find it.  At one point, he made Plaintiff bend over a garbage can and spread his buttocks, and demanded that Plaintiff "spread them more."

34.     Plaintiff spent several hours confined in the holding cell of the Precinct before he was transported to Central Booking in lower Manhattan, 100 Centre Street, where he remained until the next day.

35.     On April 3, 2014, Plaintiff was arraigned in New York County Criminal Court on Docket Number 2014NY026277.  The Criminal Court Complaint ("the Complaint") charged him with one count of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law Section 220.03.

36.     The Complaint was largely a fabrication concocted by the individual defendants, who were assigned to Plaintiff's case.  The Complaint is signed by Det. Barrett, who provides the factual basis for the criminal charge.

37.     In the Complaint, Det. Barrett states:  "I am informed by Detective Edrian Irizarry that he observed separately charged Frank Mona and defendant [Plaintiff] inside a car together.  He then observed Frank Mona hand defendant a cigarette box.  He approached the vehicle and observed Beverly drop the cigarette box from the floor.  [H]e also observed a pipe used to smoke methamphetamine in plain view on the center counsel [sic] of the car.  Detective Irizarry recovered the cigarette box from the floor of the car and found methamphetamine inside."

38.     In truth, Plaintiff never dropped a cigarette box, and there was no methamphetamine pipe in plain view.

39.     The Judge at Plaintiff's arraignment set $500 bail, which Plaintiff was able to pay.  The Judge adjourned Plaintiff's case to April 8, 2014 in Criminal Court, Part C, requiring Plaintiff's attendance.

40.     Upon paying bail, Plaintiff was released from Central Booking, having spent over 24 hours in custody.

41.     Plaintiff appeared in Criminal Court on April 8, 2014.  On that date, the New York County District Attorney filed and served a Superseding Complaint, in which Det. Irizarry states, falsely:  "I observed separately charged Frank Mona and the defendant inside a car together.  I then observed Frank Mona hand the defendant [Plaintiff] a cigarette box.  I approached the vehicle and observed the defendant drop the cigarette box onto the center console.  I also observed a pipe used to smoke methamphetamine in plain

view on the center counsel [sic] of the car.  I observed Sgt. Ortiz, shield 5606, recover the

cigarette box from the center console of the car and observed methamphetamine inside of

it."

42.     Plaintiff's case was adjourned for trial on May 12, 2014.  Plaintiff appeared in

Criminal Court again on May 12, June 23, and August 6, 2014, each time the District

Attorney answering "not ready" for trial.

43.     On August 6, 2014, the prosecution was dismissed for failure to prosecute

pursuant to New York Criminal Procedure Law Section 30.30.

44.     The NYPD failed to supervise and discipline the individual defendants despite

their histories of malicious and mendacious behavior, ignoring the risk that they would

engage in future misconduct, thereby encouraging them to continue to abuse their powers

and violate the rights of civilians.

45.      There is a systemic failure to identify, discipline, and supervise NYPD

officers and detectives who fabricate charges, a failure so widespread, obvious, and

tolerated as to constitute a custom and policy of Defendant City.

46.     The NYPD's flaccid response to lying officers and detectives – particularly in

the context of filing false charges – constitutes an irrational custom and policy that fosters

a culture of mendacity in the NYPD.

47.     Proportionate and appropriate discipline sends a message to NYPD employees

that they are not above the law and are accountable to the people whom they serve.  But

when it comes to making false statements on court documents, NYPD officers and

detectives virtually never face serious discipline.

48.     The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

49.     The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

50.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a.   Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

   b.   Severe emotional trauma, distress, degradation, and suffering;

## SECTION 1983 CLAIMS

## FIRST CLAIM

### Deprivation of Federal Civil Rights Under Section 1983

51.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

52.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

53.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

54.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

55.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

**SECOND CLAIM**

**False Arrest Under Section 1983**

56.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

57.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

58.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

59.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

**THIRD CLAIM**

**Illegal Strip Search Under Section 1983**

60.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

10

61.     By the actions described, the Defendants deprived Plaintiff of his Fourth

Amendment right to be free of unreasonable or unwarranted restraints on personal liberty,

specifically his right to be free of unlawful searches of his person.

62.     The strip search of Plaintiff – an extreme invasion of privacy and bodily

dignity – took place without probable cause to arrest Plaintiff, and without probable cause

to believe that a weapon or contraband was secreted in his anus.

63.     As a direct and proximate result of the aforementioned conduct of the

individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Malicious Prosecution Under Section 1983

64.     Plaintiff realleges and reiterates all allegations set forth in the preceding

paragraphs as if stated fully herein.

65.     By the actions described, the Defendants deprived Plaintiff of his Fourth

Amendment right to be free of unreasonable or unwarranted restraints on personal liberty,

specifically his right to be free from malicious prosecution.

66.     Without probable cause, the individual defendants directly and actively

initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt,

providing a mendacious complaint to the New York County District Attorney.

67.     As a direct and proximate result of the misconduct and abuse of authority

detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Failure to Intervene Under Section 1983

68.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

69.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

70.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

71.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Municipal Liability Under Section 1983

72.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

73.     By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest, excessive force, and illegal abuse through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

74.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

## FIRST CLAIM

### False Imprisonment under N.Y. State Law

75.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

76.     The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

77.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### Unreasonable Search and Seizure Under New York State Constitution Art. I § 12

78.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

79.     Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

80.     Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, took his property, confined him, and initiated false charges against him.

81.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Malicious Prosecution Under N.Y. State Law

82.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

83.     As detailed above, the individual defendants intentionally and with actual

malice initiated a felony prosecution against Plaintiff without probable cause.  The

prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

84.     As a direct and proximate result of the misconduct and abuse of authority

detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law
### (Against Defendant City of New York)

85.     Plaintiff realleges and reiterates all allegations set forth in the preceding

paragraphs as if stated fully herein.

86.     Defendant City owed a duty of care to Plaintiff to prevent the false arrest,

malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

87.     Upon information and belief, all of the individual defendants were unfit and

incompetent for their positions.

88.     Defendant City knew or should have known through the exercise of

reasonable diligence that the individual defendants could potentially cause harm.

89.     Defendant City's negligence in hiring, screening, training, disciplining and

retaining the individual defendants proximately caused Plaintiff's injuries.

90.     As a result of its negligent conduct, Defendant City has directly and

proximately caused the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Respondeat Superior Under N.Y. State Law

91.     Plaintiff realleges and reiterates all allegations set forth in the preceding

paragraphs as if stated fully herein.

92.     Defendant City is the employer of the individual defendants.

93.     Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false imprisonment, malicious prosecution, and unreasonable search and seizure committed by the individual defendants against Plaintiff.

94.     As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

   a.     An order awarding compensatory damages for Plaintiff Shawn Beverly in an amount to be determined at trial;

   b.     An order awarding punitive damages in an amount to be determined at trial;

   c.     A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

   d.     Such other and further relief as this Court may deem appropriate.

DATED:      July 21, 2015              _____s/_____
            New York, New York        CYRUS JOUBIN, ESQ.
                                       88 Pine Street, 14th Floor
                                       New York, NY 10005
                                       (703) 851-2467
                                       joubinlaw@gmail.com
                                       Attorney for Shawn Beverly